OWENS *et al.* v. THE KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS RAILROAD COMPANY, *Appellant.*

1. **Negligence**: PERSONAL INJURY: PERSONAL EXAMINATION OF PLAINTIFF. The defendant in an action for personal injuries has not an absolute right to have a personal examination of the plaintiff.

95 169
97 661
32a 451

95 169
98 379
98 398
35a 107
35a 531

95 169
40a 646

95 169
102 426
43a 60

95 169
49a 651

95 169
116 372
117 237
117 491

95 169
121 10
57a 160

95 169
127 452

95 169
129 97

95 169
65a 304

Owens v. The K. C., St. J. & C. B. Ry. Co.

2. ——— : ——— : ———. Such examination is a matter of discretion with the trial court, the exercise of which will not be interfered with unless manifestly abused, and *held*, there was no abuse of such discretion in this case.

3. **Instructions:** DEPARTURE. A petition in an action against a railroad charged negligence in not stopping the train a reasonable time and negligence in pulling the plaintiff off; also that defendant's servant assaulted plaintiff. The instructions authorized a recovery on the alleged ground of negligence and not on the assault. *Held*, there was no departure.

4. ——— : CONTRIBUTORY NEGLIGENCE. An instruction for plaintiff in an action for negligence is not erroneous which authorizes a recovery on the facts hypothecated in it, without reference to plaintiff's contributory negligence, where the latter is submitted to the jury in a separate instruction. (*Sullivan v. Railroad*, 88 Mo. 182, *not followed*).

5. **Witness:** KNOWINGLY OR WILFULLY SWEARING FALSELY. It is sufficient that a witness has either wilfully *or* knowingly sworn falsely to any material matter to authorize the jury to disregard his entire evidence.

6. **Common Carrier:** INJURY TO PASSENGER: PREVIOUS ILL HEALTH. It is no defence to an action against a common carrier for injuries received by a passenger by reason of its negligence that the injuries would not have occurred or would not have been so great had the passenger been in good health.

7. ——— : ——— : EVIDENCE. In such action, it is competent for the plaintiff to describe the injuries she received, and the fact that she says the nerves of her head, side, and left limb were paralyzed is no ground for excluding it. It is not in the nature of expert evidence.

8. **Evidence:** DECLARATIONS OF PARTY TO SUIT. It is not necessary to lay any foundation in order to give in evidence the declarations of a party to a suit, for the purpose of impeaching his testimony.

9. ——— : ———. Statements of a party to a suit, purporting to be contained in a deposition partly taken and then abandoned, are inadmissible for the purpose of impeaching her testimony, where she denies making such statements and there is no proof offered that she did.

*Appeal from Lafayette Circuit Court.*—HON. J. P. STROTHER, Judge.

AFFIRMED.

*Strong & Mosman, J. D. Shewalter* and *R. P. C. Wilson* for appellant.

(1) Appellant's application for an order directing the plaintiff to be examined by medical experts was timely and reasonable and should have been sustained. *Schroeder v. Railroad*, 47 Ia. 379 ; *White.v. Railroad,* 61 Wis. 536 ; *Hatfield v. Railroad*, 33 Minn. 130 ; *Railroad v. Thul*, 29 Kas. 466 ; *Shepard v. Railroad*, 85 Mo. 629. (2) The court committed error in its rulings on the evidence. Mrs. Owens was not competent to testify as an expert. No one but a medical expert is qualified to testify as to the character, or the effects or consequences resulting from the injuries she received. *Harris v. Railroad*, 3 Bosw. 77 ; *Bois v. McAllister*, 12 Me. 308; *Williams v. State*, 64 Md. 284; *People v. Olmstead*, 30 Mich. 434; *Grattan v. Co.*, 80 N. Y. 301 ; *State v. Porter*, 34 Ia. 131 ; *Branson v. Turner*, 77 Mo. 495 ; *White v. Stoner*, 18 Mo. App. 548. (3) On a petition for an assault committed by defendant's agents, and pulling plaintiff from the train, evidence or an instruction on negligence on the part of the defendant, in failing to stop a sufficient length of time at the depot, is error. Plaintiff cannot sue for an assault, and recover for a failure to stop a sufficient length of time at the depot. *Price v. Railroad*, 72 Mo. 414 ; *Edens v. Railroad*, 72 Mo. 213 ; *Buffington v. Railroad*, 64 Mo. 246 ; *Waldhier v. Railroad*, 71 Mo. 514 ; *Field v. Railroad,* 76 Mo. 614. (4) The third instruction given on plaintiffs' motion, incorrectly stated the law, and was not justified by the facts. *State v. Palmer*, 88 Mo. 568; *Fath v. Hake*, 16 Mo. App. 527 ; *Huston v. Forsythe,* 56 Mo. 416. (5) Plaintiffs' fourth and eighth instructions are so nearly alike that we will consider them together. Both of said instructions are erroneous, for the following

reasons : (a) Plaintiffs were not entitled, under the circumstances of this case, to ask instructions which conceded that the testimony of Mrs. Owens and her two physicians was untrue. One cannot, when the case made by his own testimony is overthrown by the evidence of the opposite party, ask a recovery on the hypothesis that such opposing testimony is true. (b) Said instruction should not have been given, because, if it be conceded that the testimony of plaintiff and her physicians is not true, there was no evidence on which to base them. (c) Said fourth instruction was erroneous, because it referred the jury to the petition to ascertain the particular way and manner in which Mrs. Owens was pulled from the train. *Remler v. Chanute*, 15 Mo. App. 196; *Butcher v. Death*, 15 Mo. 271. (d) Said fourth instruction is erroneous in that it does not require the act of defendant's servant to have been one within the general scope of his employment. (e) Said eighth instruction was erroneous in permitting a recovery without any finding of negligence. Under it the jury were authorized to find a verdict for plaintiff, in case of a sheer accident, resulting in Mrs. Owens being pulled from the train. (f) Both said instructions were very misleading, and highly prejudicial to the defendant's case. In them, the court indulged in an unfair and unjust, though plausible, characterization of the defendant's claim in respect to the damages, which was nothing more nor less than a speech. *Scoville v. Glasner*, 79 Mo. 450. There was no evidence to authorize submitting to the jury the question, whether the act done by the brakeman was within the "scope" or "the line of his employment." *Marion v. Railroad*, 59 Iowa, 428; *Towanda v. Herman*, 86 Pa. St. 418; *Railroad v. McLain*, 91 Pa. St. 442; *Brown v. Railroad*, 67 Mo. 122. Said instructions were fatally defective in failing to give clear, distinct, and specific explanation to the jury in

respect to what was meant by the words that the defend-
ant was "responsible for all the ill effects which naturally
and necessarily followed the injuries in the condition of
health in which plaintiff was at that time." *Dyer v.
Bannock*, 2 Mo. App. 432 ; *Boogher v. Neece*, 75 Mo.
383 ; *Wiser v. Chesley*, 53 Mo. 547 ; *Speak v. Dry Goods
Co.*, 22 Mo. App. 122 ; *Nichols v. Winfrey*, 79 Mo. 533 ;
*Digby v. Ins. Co.*, 3 Mo. App. 603 ; *Morgan v. Durfee*,
69 Mo. 469 ; *Young v. Ridenbaugh*, 67 Mo. 574 ; *Legg
v. Johnson*, 23 Mo. App. 590 ; *Belt v. Goode*, 31 Mo.
128 ; *Stewart v. Clinton*, 79 Mo. 603 ; *Kitteringham v.
Railroad*, 62 Iowa, 285. Said instructions announced
an erroneous rule, as the measure of the damages to
which plaintiff was entitled, under the facts hypothe-
cated in them. *State v. Murphy*, 33 Ia. 276 ; 11 Am.
Dec. 125 ; *Brown v. Railroad*, 66 Mo. 597 ; *Perkins v.
Railroad*, 55 Mo. 213 ; *Whalen v. Church*, 62 Mo. 326 ;
*Morgan v. Durfee*, 69 Mo. 479 ; *Frances v. Transfer
Co.*, 5 Mo. App. 7 ; *Marshall v. Railroad*, 78 Mo. 610 ;
*Wells v. Sanger*, 21 Mo. 354 ; *Railroad v. Armo*, 91 U.
S. 489. It was error to give the fifth instruction, because
the same was irrelevant under the issues made by the
pleadings, and actually misled the jury, to defendant's
prejudice. *Staples v. Canton*, 69 Mo. 594 ; *Stewart v.
Clinton*, 79 Mo. 603.

*Wallace & Chiles, Woodson & Woodson, Green &
Burnes, Anderson & Carmack* and *S. C. Woodson*
for respondents.

(1) The evidence clearly made out a strong case
for respondents which made it the duty of the court to
submit the issues to the jury. *Covey v. Railroad*, 86
Mo. 642 ; *Siela v. Railroad*, 82 Mo. 435 ; *Hipsley v.
Railroad*, 88 Mo. 353 ; *Kenney v. Railroad*, 80 Mo.
578 ; *Gregory v. Chambers*, 78 Mo. 298–9 ; *Meyers v.
Trust Co.*, 82 Mo. 241 ; *Bryan v. Wear*, 4 Mo. 106 ;
*McAfee v. Bryan*, 11 Mo. 365 ; *Steamboat v. Matthews*,

28 Mo. 248; *Bradford v. Rudolph*, 45 Mo. 426; *Kelly v. Railroad*, 70 Mo. 604. (2) It is the duty of a common carrier to safely carry its passengers, to points of destination, as far as human care and foresight will go. Hutchinson on Carriers, secs. 500, 501, 502, 503, 650, and cases cited; Cooley on Torts, 642, 633, 645, and cases cited; 2 Rorer on Railroads, 820, 821, 822, and cases cited; Patterson's Railway Accident Law, 232, and cases cited; *Waller v. Railroad*, 83 Mo. 615, 616; *Lemon v. Chanslor*, 68 Mo. 357, 368; *Railroad v. Derby*, 14 How. 468; *Sawyer v. Railroad*, 37 Mo. 246; *Christie v. Griggs*, 2 Campbell, 79; *Derwort v. Loomer*, 21 Conn. 246; *Knight v. Railroad*, 56 Me. 234; *Farish v. Reigle*, 11 Grat. 697; *Taylor v. Railroad*, 48 N. H. 229, 304; *Sherlock v. Alling*, 44 Ind. 184; *Railroad v. Horst*, 93 U. S. 291; *White v. Railroad*, 136 Mass. 321. (3) A common carrier—a railroad company—is liable to a passenger for an assault made by a servant assisting in the management of the train upon which the passenger is being carried, even though the assault may have been wilful. Hutchinson on Carriers, secs. 596, 597, 598; *Stewart v. Railroad*, 90 N. Y. 588; Wood on Master and Servant [2 Ed.] sec. 295, p. 560, sec. 307, p. 577; *Maleck v. Railroad*, 57 Mo. 18; *Harriman v. Stowe*, 57 Mo. 98; Wood on Master and Ser. [2 Ed.] sec. 295, p. 560, and cases cited; *Sherley v. Billings*, 8 Bush (Ky.) 152. (4) It is the duty of a common carrier of passengers, a railroad company, to stop its train at the point of destination of the passenger a sufficient length of time to afford the passenger a reasonable opportunity to alight therefrom in safety, and a failure to do so is negligence. 2 Rorer on Railroads, 965, 966, 967, and cases cited; Hutch. on Car., sec. 612, and cases cited; Patterson's Railway Accident Law, sec. 258, and cases cited; *Hickman v. Railroad*, 91 Mo. 435; *Straus v. Railroad*, 75 Mo. 190; *Waller v. Railroad*, 83 Mo. 615; *Straus v. Railroad*, 86 Mo. 426; *Clotworthy v. Railroad*, 80 Mo. 223.

(5) "The fact that the order is proper, and only contemplated a proper execution on the part of the servant, is of no account. Having clothed the servant with authority to do an act at all, the master is bound at his peril to see that it is properly executed, and is liable alike for mistakes of judgment, or infirmity of temper, on the part of his servant." Wood on Mast. and Serv., secs. 293, 303, p. 571 [2 Ed.] and cases cited; *Garretzen v. Duenckel*, 50 Mo. 104; *Cousins v. Railroad*, 66 Mo. 576; *Brown v. Railroad*, 66 Mo. 541; *Snyder v. Railroad*, 60 Mo. 416; *Harriman v. Stowe*, 57 Mo. 98; *Minter v. Railroad*, 41 Mo. 507–8. (6) If the allegation in the petition was that the act resulting in the injury sued for was wilfully done, it would be sustained by evidence that it was negligently done. *Conway v. Reed*, 66 Mo. 347; *Neilon v. Railroad*, 85 Mo. 605; *Graham v. Railroad*, 66 Mo. 538. (7) The attending physician is always a competent witness when introduced by his patient. *Carrington v. St. Louis*, 89 Mo. 209; *Groll v. Tower*, 85 Mo. 249; *Squires v. Chillicothe*, 89 Mo. 230; *Blair v. Railroad*, 89 Mo. 337; Roger's Expert Testimony, 72, 74, and cases cited. (8) The liability of a railroad company for a violent ejection of a passenger from its train is not diminished by the fact that the passenger was at the time suffering from a disease which aggravated the injuries received or rendered them more difficult to cure. *Brown v. Railroad*, 66 Mo. 588; 3 Suth. on Dam. 269; Patterson Railway Accident Law, sec. 278, p. 292. (9) It is not reversible error for a witness to state an opinion when the facts upon which such opinion is based are also stated. *Strauss v. Railroad*, 86 Mo. 422. (10) The refusal of defendant's application to have a commission of surgeons appointed to make examination of Mrs. Owens was not error. *Shepard v. Railroad*, 85 Mo. 629; Patterson Railway Accident Law, sec. 367. (11) The proof that plaintiff was a passenger, that an accident happened,

and that she was injured thereby, makes a *prima-facie* case which must be submitted to the jury. *Railroad v. Buck*, 96 Ind. 346, 358 ; *Redford v. Railroad*, 95 Ind. 551 ; *Dougherty v. Railroad*, 81 Mo. 525 ; *Lemon v. Chanslor*, 68 Mo. 341, 356 ; *Hipsley v Railroad*, 88 Mo. 348. (12) The court committed no error in giving or refusing instructions.

BLACK, J.—This is a suit for personal injuries to the plaintiff, Mrs. Owens, wife of the other plaintiff. She prevailed in the court below, and the defendant appealed. On the twentieth of November, 1883, she and her daughter were passengers on one of the defendant's trains from Kansas City to Beverly. The petition, which is very lengthy, states, in substance, that defendant negligently failed and refused to stop the train at Beverly long enough to allow the plaintiff a reasonable time to alight in safety ; that, as soon as the train stopped, she stepped to the door of the car to get off ; that when she arrived at the car platform, the train was negligently put in motion by defendant ; that the brakeman, knowing the train was in motion, unlawfully assaulted, seized, and took hold of her, and violently and negligently pulled and threw her from the cars to the depot platform, inflicting upon her bruises, wounds, etc. ; that, on account of negligently putting the train in motion, and negligently pulling and throwing her from the platform of the car, she has suffered pain, etc. The answer is a general denial, with the further defence that plaintiff was guilty of contributory negligence in attempting to get off the train when in motion.

The evidence for the plaintiff tends to show that, when the train began to slack up, the brakeman said, "This is Beverly" ; that he picked up the plaintiff's valise and walked towards the car door ; that the daughter followed him, and plaintiff followed the daughter ;

that the brakeman assisted the girl to the depot platform. Plaintiff says when she got to the platform, two persons were getting on the car, so that she stepped through on the platform of the car in front; that she took hold of the iron rod that extended around the car; that the train was then moving faster; that the brakeman, who was on the depot platform, walking to keep up with the car, reached up and caught her between the elbow and wrist and pulled her to the depot platform; that she then became unconscious, from injuries to her head, arm, hip, and side. This evidence is corroborated by that of the daughter; and other evidence is, that the train stopped from ten seconds to a minute only. The evidence for the defendant tends to show that the train stopped for the usual, and for a reasonable, time; that plaintiff attempted to get off after the train had started, and that she fell from the platform of the car; that the brakeman warned her not to get off, and at the same time was trying to signal the engineer to stop.

1. The suit was commenced in the Platte circuit court, and transferred to the Lafayette circuit court by change of venue. There defendant, at the March term, 1884, filed a motion asking the court to require plaintiff to submit her person to an examination by a commission of medical experts, to be appointed by the court, in order to determine the character of the injuries, and to what extent they were due to the accident. This motion was not determined until the term at which the cause was tried, April, 1885, when it was overruled, and the defendant excepted. It was in substance held in *Shepard v. Railroad*, 85 Mo. 629, that the defendant has no absolute right to have a personal examination; that it is a matter in which the court has a discretion, the exercise of which will not be interfered with, unless manifestly abused. Of course, the court is not bound to refuse, or to grant the motion, to the full extent of the prayer.

Its order may be moulded to suit the circumstances of the case. In that case the plaintiff, a lady, had once submitted to an examination by one physician, and offered to submit to an examination by another eminent and reputable surgeon ; but with this the defendant was not satisfied. Under these circumstances, we held in that case, that there was no error in refusing the motion. In the later case of *Sidekum v. Railroad*, 93 Mo. 400, it was held there was no error in refusing such a motion. In that case, the trial court was of the opinion that an examination was not necessary in order to ascertain the real condition of the plaintiff and the nature and extent of her injuries. This court, upon an examination of the evidence, reached the same conclusion. The ruling is certainly based in part upon that ground. The power of the court to make and enforce an order for the personal examination of the injured party must be taken as established in this state, as it is in many others. *Schroeder v. Railroad*, 47 Iowa, 375 ; *White v. Railroad*, 61 Wis. 536 ; *Hatfield v. Railroad*, 33 Minn. 130 ; *Railroad v. Thul*, 29 Kan. 466. The court might, with propriety, have made an order for the examination of the plaintiff in this case, by a disinterested reputable physician, in the presence of her husband, if desired, and lady friends. But the real question here is, whether there has been an abuse of the discretion lodged in the trial court.

In the plaintiff's deposition, taken and filed before this motion was made, she says that when the brakeman pulled her from the car step, her head, left arm, and hip struck against the car ; that because of the injuries then received she has lost the use of her left arm, and her left leg ; that the arm is paralyzed ; that since then she has not been able to stand on her feet, whereas before she was able to attend to her household duties. She was cross-examined for many days and at great

length, answering between five and six hundred questions, often in the presence of physicians employed and taken to the bedroom by defendant, but not introduced to her. This examination shows that she received an injury in the back when thirteen years of age; that a few years before the accident in question she went to Denver for her health; that while there her shoulder was dislocated; that she was subject to rheumatism in her left side and arm, and suffered from what she terms rheumatic neuralgia, and had been under the charge of a physician for years. Much other evidence was offered, on the one side and the other, disclosing the state of her health, both before and after she received the injuries complained of. This evidence was given by persons who could and did detail facts within their observation. Some of it goes to show that there was no perfect paralysis, but that she was suffering greatly from the injuries cannot be doubted. A medical examination could add no information as to her previous health, and but little to her subsequent condition. It is suggested that she represents her condition to be worse than it really is, and that she has misled her two physicians, who were examined and cross-examined at length. We discover no real ground for such suggestion, and, if any there is, it was matter of observation to the jury. Since the evidence easily attainable, and really in the case, shows a history of her health for a large portion of her life, and also shows her physical condition since the accident, and what acts she can do and what she cannot, we will not disturb the ruling of the trial court.

2. The court, in the first instruction for plaintiff, in substance, said that if, after the station was announced by the brakeman, the plaintiff, with reasonable and usual expedition, went to the platform of the car, and that, before she could get off, the train was started, and while on the car step waiting for the car to stop, the brakeman took hold of her arm and pulled her

to the depot platform, and she was injured, etc., then she was entitled to recover.. The seventh instruction declares that it was the duty of the defendant to stop the train a reasonable time for the 'plaintiff to get off, *i. e.*, such a time as is required for a person using ordinary diligence to get off; and if the train was started before plaintiff had such a reasonable time, then defendant was guilty of negligence, and if the jury further believed that the brakeman pulled her from the car while in motion to the depot platform and she was injured, then, etc.

The objection to these instructions that they allow a recovery upon proof *alone* of negligence in failing to stop a reasonable time is not well founded; for in both instructions the jury were required to find the further fact that the brakeman pulled her from the car while in motion. It is true no finding is, in terms, required that he *negligently* pulled her from the car; but if the train started without giving her time to get off, and the brakeman pulled her off while the car was in motion, it was a negligent act. The contrary theory, presented by the defendant's evidence, namely, that she persisted in getting off, though warned not to do so, fell, and was caught by the brakeman, was presented by instructions given at the request of the defendant. The evidence of the defendant is an out and out denial that the brakeman pulled her off at all. The instructions present the real issue made by the evidence.

The next objection to these instructions is, that the plaintiff cannot sue for an assault and recover for negligence in failing to stop the train. The petition does make some extravagant averments; but notwithstanding it charges an assault by the servant, it also in terms charges negligence in not stopping the train a reasonable time, and negligence on the part of the servant in pulling her off. The instructions cannot be said to be a departure from the petition. The petition

contains all that is in the instructions, and more too, and it follows that it is not a case of declaring upon one cause of action, and a recovery upon another. *Conway v. Reed*, 66 Mo. 350.

The final objection to these two instructions is, that they ignore the defence of contributory negligence, because they do not conclude with some such words as, "provided the plaintiff was not negligent." On this defence the court gave a number of instructions, one of which is as follows:

"3. If the jury believe from the evidence, that plaintiff recklessly or negligently attempted to alight, or jump from the train, and the brakeman either tried to keep her from so doing, or to assist her to alight after she voluntarily attempted to do so, and that he tried to keep her from getting off, then the jury will find for defendant, no matter what her injuries may have been, or what her condition now is."

To say, with these instructions, that the jury could find for plaintiff, without regard to negligence on her part, is little short of charging them with corruption. The instructions are to be taken as a whole, are so taken by men of common understanding, and can be understood in no other way. There is no necessity for qualifying each by an express reference to the others. They thus qualify themselves, when in the form these instructions are. The contrary ruling in *Sullivan v. Railroad*, 88 Mo. 182, is not to be followed.

3. The instruction that if any witness had wilfully sworn falsely to any material matter, the jury are at liberty to disregard the whole of his evidence, is without valid objection. It is sufficient that the witness either wilfully or knowingly swore falsely. *State v. Palmer*, 88 Mo. 568; *White v. Maxey*, 64 Mo. 552. Defendant asked and had given a like instruction, and

it is in no position to say there was no evidence to justify the giving of such an instruction.

4. The fourth and eighth instructions are in substance the same, and may be considered together. The eighth is, that if plaintiff was pulled off the car against her will by defendant's servant, acting within the scope of his employment, and that she thereby received injuries, "then the defendant is responsible for all the ill effects which naturally and necessarily follow the injuries in the condition of health in which plaintiff was at the time, and it is no defence that the injuries may have been aggravated and rendered more difficult to cure by reason of plaintiff's state of health, or that, by reason of latent disease, the injuries were rendered more serious to her than they would have been to a person in robust health." This instruction, it will be seen, is almost the same as that in the case of *Brown v. Railroad*, 66 Mo. 588, which was approved by this court. There, it is true, the instruction was predicated upon the fact that plaintiff was "unlawfully and wilfully put off the car." But if the plaintiff was negligently pulled off the car, she has the right to be compensated for all the injuries which she would not have sustained had due care been exercised. Invalids, as well as persons in robust health, are entitled to the exercise of the highest degree of care on the part of the common carrier. It is no answer to say that the injuries would not have occurred, or would not have been so great, had the passenger been in good health. *Allison v. Railroad*, 42 Ia. 274.

5. It was competent for the plaintiff to describe the injuries which she received, and it is no ground for excluding this evidence because she says the nerves of her head, side, and left limb were paralyzed. It is not in the nature of expert evidence.

6. When the plaintiff's deposition was taken and as a part of the cross-examination, counsel for the

defendant read over twelve or fourteen questions and answers of which the following are a part:

Q. "I will ask you if, during your suffering from inflammatory rheumatism, you were not in the habit of using opiates—morphia?" A. "No, sir; not to excess. I could take morphia into the stomach and it relieved it."

Q. "I will ask you if you did not take it regularly?" A. "Not for my shoulder."

She was then asked and made answer as follows: Q. "Is not the foregoing a true and literal statement of questions and your answers made thereto in this room on the first day that your deposition was attempted to be taken in this case, and was not that statement made in the presence of Charles A. Blair, a stenographer, who, at the time, was, by agreement of parties, present for making such stenographic report?" A. "It is false from beginning to end. It is not a true statement."

The court, on motion of the plaintiff, excluded all of the above described portion of the deposition, and defendant excepted. It seems a previous effort had been made to take plaintiff's deposition by her attorneys, but it had not been completed, signed, or certified, and hence not filed in this cause. The plaintiff, throughout her examination read in evidence, concedes that she had used morphine, but says it was by way of injection only. Now in the first place, as the witness was a party to the suit, it was not necessary to ask these questions to lay a foundation to impeach her evidence. Her declarations could be offered in evidence as against her without laying any foundation therefor. Again this portion of the deposition was of no benefit to defendant, unless followed by proof that she did make the alleged answers to the alleged questions. The defendant did not show or offer to show that she made any such statements; and the portions of the deposition in question were properly excluded.

7. Many other questions are made in the briefs for

appellant, but they are less substantial than those before considered, and will not be followed out in detail in this opinion.

The case seems to have been fairly tried, and the judgment is affirmed. Ray and Sherwood, JJ., dissent ; the other judges concur.